44 F.Supp.2d 1023 (1999)
Michael CUFFLEY and the Knights of the Ku Klux Klan, Plaintiffs,
v.
Joe MICKES, et al., Defendants.
No. 4:97CV2110-SNL.
United States District Court, E.D. Missouri, Eastern Division.
April 13, 1999.
*1024 Robert Herman, Partner, Schwartz and Herman, St. Louis, MO, for plaintiffs.
Curtis F. Thompson, Missouri Highway & Transportation Commission, Jefferson City, MO, Richard B. Regan, Springfield, MO, for defendants.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on Defendants' Motion for Summary Judgment (# 16) filed November 16, 1998, and Petitioners' Motion for Summary Judgment (# 23) filed December 31, 1998. The facts in this case have never truly been in dispute. Rather, the parties have come to this Court twice for a ruling as a matter of law on whether or not the Missouri Highway Transportation Commission (MHTC) may deny the so-called Knights of the Ku Klux Klan (Klan) the opportunity to pick up garbage on the side of a Missouri highway as part of the Adopt-a-Highway (AAH) program.[1]

Summary Judgment Standard
Courts have repeatedly recognized that summary judgment, like dismissal, is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment *1025 motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Assoc. Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988). But there must be absolutely "no genuine issue as to a material fact and the moving party [must be] entitled to judgment as a matter of law." Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court will now turn to the facts which have largely remained unchanged since the last time these parties were in this Court.

Background
The controversy between these parties began on May 31, 1994, when Michael Cuffley, as the local Klan's "Unit Recruiter" filed an application to participate in the AAH program by adopting a portion of Interstate Highway 55 between Utah and Gasconade within the city of St. Louis. See Missouri, ex rel., Missouri Highway & Transp. Comm'n v. Cuffley, 927 F.Supp. 1248, 1252 (E.D.Mo.1996) (Cuffley I). At that time, the MHTC had no formal written administrative regulations that governed the AAH program. Rather than approving or denying Cuffley's application on behalf of the Klan, the MHTC opted to file a federal declaratory judgment action on behalf of the state of Missouri to determine whether or not they could legally deny the application.
The District Court in Cuffley I determined that the AAH program was either a limited public forum or a non-public forum, and that the MHTC excluded the Klan from the program because of viewpoint discrimination. On appeal, the Eighth Circuit Court of Appeals held that the federal court had no subject matter jurisdiction to rule on a declaratory judgment action filed by a state to determine the Constitutionality of its own actions. Missouri, ex rel., Missouri Highway & Transp. Comm'n v. Cuffley, 112 F.3d 1332, 1336-37 (8th Cir.1997). Furthermore, the Eighth Circuit found that the issue decided by the District Court was not yet ripe because the MHTC had never denied the Klan's application. Id., 112 F.3d at 1338. The Eighth Circuit vacated the District Court's judgment in favor of the Klan, and ordered the case remanded with instructions to dismiss.
During the pendency of the Cuffley I litigation, the MHTC adopted certain regulations governing future adoptions. First, the MHTC will not allow any organization which discriminates against individuals on any illegal grounds under state or federal law to adopt a highway. Mo.Code Regs. Ann. tit. 7, § 10-14.030(2)(B). Second, the MHTC will not allow any organization with a history of unlawfully violent or criminal behavior to adopt a highway. Mo.Code Regs.Ann. tit. 7, § 10-14.030(2)(C). Third, the District Engineer of the Metro St. Louis District of the Missouri Department of Transportation (MoDOT) imposed a moratorium on all new adoptions of interstate highways within the city limits of St. Louis in order to prevent an expansion of the number of people on the sides of the roads. Knobbe Deposition, 11-12, 14.
After the dismissal of Cuffley I, the MHTC denied the Klan's application on the stated grounds that the Klan violated state and federal discrimination laws, the Klan had a history of violent lawlessness, and that the MHTC was no longer allowing anyone to adopt highways within the *1026 city of St. Louis. See Petitioners' Exhibit 4, Denial Letter of August 14, 1997. The Klan then filed this lawsuit under 42 U.S.C. § 1983, claiming that the MHTC had denied it of the equal protection of the laws, and also deprived it of its First Amendment right to free speech. The Klan sought to enjoin the Chief Engineer of the MoDot, the members of the MHTC, and the District Engineer of MoDot's Metro St. Louis District from denying the Klan's application to participate in the AAH program.
Defendants put forth two arguments in support of their entitlement to summary judgment. First, they argue that the Klan is collaterally estopped from asserting its right to participate in the AAH program by the decision of the Fifth Circuit Court of Appeals in State of Texas v. Knights of the Ku Klux Klan, 58 F.3d 1075 (5th Cir. 1995). Second, they argue that any speech involved in the AAH program is the MHTC's speech, and therefore the program creates no First or Fourteenth Amendment Rights in the Klan.
The Klan relies on three different arguments in its own motion for summary judgment. First, the Klan argues that the MHTC's denial of its application to participate in the AAH program deprives it of equal protection under the law by basing the Klan's entitlement on the surrender of certain Constitutional rights to free speech. Second, the Klan argues that the regulations adopted by the MHTC deprive the Klan of its right to due process as the regulations are so vague and unclear that they create unfettered discretion in the officials charged with applying them and that their application to the Klan was arbitrary and capricious. Third, the Klan argues that the MHTC's denial of the Klan's application constituted unlawful "viewpoint discrimination" in violation of the First and Fourteenth Amendments.

Discussion
The Court does not believe any entitlement to be at issue in this case, nor does their appear to be any attempt by the State to force the Klan to change its offensive views. Rather, this case appears to be a straight-forward denial of access. Therefore the Court will deny Petitioners' Motion for Summary Judgment on the Equal Protection and Due Process grounds. Instead, the Court will directly address the substantive issue of First Amendment speech as in Cuffley I. For the most part, the Court agrees with the excellent reasoning stated by the District Court in Cuffley I. The Klan's desired participation in the AAH program is indeed speech protected under the First Amendment. See Cuffley I, 927 F.Supp. at 1254-55. For the same reasons stated in Cuffley I, this Court rejects the MHTC's argument that the speech involved in the AAH program is MHTC's speech.[2]
Although the speech analysis in this matter has not changed, the Court disagrees somewhat with the forum analysis in Cuffley I. Without expressly deciding the question, the District Court in Cuffley I stated some disagreement with the Fifth Circuit's conclusion that the Adopt-a-Highway program in Texas constituted a nonpublic forum. The District Court in *1027 Cuffley I believed, contrary to the Fifth Circuit opinion, that the forum involved was probably the roadside and not the AAH program itself. 927 F.Supp. at 1257. The District Court distinguished the situation in Missouri because it found no intent by the Klan here to have its name presented under the imprimatur of the state. Rather, the Court in Cuffley I found that the MHTC had opened the sides of the roads generally to any group wishing to pick up litter and to project an image of itself as altruistic and environmentally conscious. 927 F.Supp. at 1258. The Klan had just as much right to portray itself as such as any other group.[3] Thus, the Court concluded that the AAH program in Missouri most likely constituted a designated public forum.
At this time, in light of the MHTC's subsequent attempts to limit access to the program, the Court finds that the MHTC attempted to create a nonpublic forum rather than a designated public forum. Because the exact forum involved in this case is difficult to identify, it may be easiest to define what the forum is by discussing what it is not. The shoulders of interstate highways are certainly not traditional public fora, such as parks and street corners where people have traditionally gathered to present, share and exchange ideas. See Cornelius v. N.A.A.C.P. Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). Nor has the MHTC, at this time, designated the roadsides as public fora. A designated public forum is a location or channel of communication designated by the government for use by the public at large for assembly and speech, for use by certain speakers or for the discussion of certain subjects. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983).
The Court finds that the MHTC does not presently intend to open the shoulders of the Missouri state and interstate highway system for the purposes of traditional discourse. Rather, the MHTC has developed a scheme to have litter removed from the roadways cheaply by utilizing free labor. This program creates an extremely narrow outlet for ancillary expression, strictly limited to the participant's name and the fact of his, her or its participation. The MHTC maintains tight control over both the program itself and the attendant opportunity for expression it creates. The MHTC provides the garbage bags for the volunteers, it tells them how often they must clean the highway, and it strictly limits what they may put on the signs which the MHTC erects in recognition of their efforts. The state maintains strict control over both the method of speech (placement of the sign and the act of participation) and the message itself (the simple fact of the group's participation in the program).
These policies represent legitimate safety concerns and the MHTC's insistence on maintaining independence from association with the political, social or commercial interests of the program's participants. Under these circumstances, the Court concludes that the MHTC has in no way designated either the AAH program or the sides of the highways generally as public fora. However, as the MHTC does allow the very limited expressive activity discussed above to accompany participation, the program does constitute a forum, but a nonpublic one. See Cornelius, 473 U.S. at 806, 105 S.Ct. at 3451.
Having concluded that this case involves a nonpublic forum, the Court must now address the regulations imposed by the MHTC. Access to nonpublic fora can be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view. Cornelius, 473 U.S. at 800, 105 S.Ct. at 3448. The *1028 Court will now address each of the three regulations relied upon by the MHTC in denying the Klan's application to participate in the AAH program.
The MHTC first relies upon its nondiscrimination policy. The state denies participation to any organization who fails to adhere to the restrictions of all state and federal nondiscrimination laws. Mo. Code Regs.Ann. tit. 7, § 10-14.030(2)(B). Specifically, the applicant must not discriminate on the basis of race, religion, color, national origin or disability. Such discrimination disqualifies the applicant from participation in the program. The MHTC is only limited by reasonableness in adopting a regulation such as this. The stated purpose of the rule, that bestowing a benefit upon an organization which discriminates unlawfully may place MHTC at risk of forfeiting federal funding, appears reasonable enough to the Court. The regulation need not be the only reasonable regulation nor even the most reasonable regulation. Cornelius, 473 U.S. at 808, 105 S.Ct. at 3452.
However, simply because the MHTC has adopted a reasonable regulation does not make its application viewpoint neutral. In this case, the MHTC stated as its reason for denying the Klan's application the fact that the Klan discriminates on the bases of race, religion, color and national origin. Specifically, the MHTC asserted in its rejection letter to the Klan that the Klan's policies violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Title VI). Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Therefore, in order to violate Title VI, the Klan would have to be responsible for depriving some person access to a program or activity receiving Federal financial assistance, as defined in 42 U.S.C. § 2000d-4a.
The MHTC has identified no program or activity to which the Klan controls access. The Klan itself is certainly not a program or activity as defined in the statute. Therefore, the MHTC has not identified any violation of Title VI by the Klan which would render the Klan ineligible to participate in the AAH program under the MHTC's own guidelines. Nor has the MHTC identified any violation of Executive Order 94-03 by the Klan. The Klan certainly has discriminatory membership criteria. However, as the Klan points out, so do many of the other private organizations which participate in the AAH program, such as the Boy Scouts of America and the Knights of Columbus. None of those membership requirements violate any state or federal non-discrimination laws to the Court's knowledge. As the MHTC has presented no basis for rejecting the Klan's application based on its nondiscrimination policies, it is left with its pre-regulation justification for denying the Klan's application: that the Klan believes in racial segregation and white supremacy.
Regardless of how obviously flawed and unfortunate the Klan's beliefs may be, the MHTC may not base its decision to exclude the Klan from the AAH program on those beliefs. The Court concludes that the MHTC's reliance upon its nondiscrimination policies in reaching the decision to deny the Klan's application to participate in the AAH program was actually an effort to suppress the Klan's First Amendment right to espouse unpopular and indeed morally and intellectually repugnant ideas. Therefore, that justification cannot withstand applicable First Amendment scrutiny, and the Klan's motion for summary judgment must be granted on that issue.
The second asserted regulation relied upon by the MHTC states that "Applicants with a history of unlawfully violent or criminal behavior will be prohibited from participation in the program." Mo. Code Regs.Ann. tit. 7, § 10-14.030(2)(C). *1029 That regulation fails to meet the first criterium for regulation of speech in nonpublic fora: that the regulation be reasonable. MHTC has asserted no rational basis for that regulation, nor can the Court conceive of any for the particular language adopted by the MHTC. In fact, the Court has no clear idea what that regulation means nor how it could ever be interpreted in such a way as to limit the discretion of whatever government official was charged with applying it. It is not clear whether the regulation applies only to behavior that has been judicially determined "criminal" or whether it applies to all unlawful behavior generally. The Court doubts that the incredibly broad spectrum of action which could potentially fall into the latter category could be reasonably regulated by any commission, but under the facts present here, the policy certainly lacks sufficient specificity to be useful.
There are certainly justifiable reasons for disqualifying certain criminals from participating in some state sanctioned activities. However, in those cases, the government strictly limits exactly what the convicted criminal forfeits and why. Here, none of the MHTC officials questioned about the meaning of Section 10-14.030(2)(C) expressed any greater understanding than the Court has. Accordingly, that regulation fails the test of reasonableness demanded by the First Amendment. Petitioners' Motion for Summary Judgment should be granted on that regulation as well.
Finally, the Court will address the MHTC's moratorium on interstate highway adoptions within the St. Louis city limits. The Court finds that to be a reasonable and viewpoint neutral regulation. The MHTC stated that the purpose for ceasing all additional highway adoptions inside the St. Louis city limits was to increase safety on busy urban highways. While the Court recognizes that this might not be the most effective way to increase safety, it is a reasonable one. See Cornelius, 473 U.S. at 808, 105 S.Ct. at 3452. The Klan may still adopt a highway in any location within the state not affected by the moratorium. The Klan may also express its alleged philosophy of environmental consciousness in any other appropriate manner.[4]
The moratorium is also viewpoint neutral. The Klan does not dispute that the moratorium has been applied generally to prevent highway adoptions without regard to the viewpoint of any applicant. Accordingly, the Klan's motion for summary judgment will be denied on this point, and judgment will be entered in favor of the MHTC insofar as they asserted that the moratorium was constitutionally permissible. As the record reflects that, as of this time, the Klan has applied to adopt no other stretch of highway than "both sides of I-55 in St. Louis City from ½ mile south of Utah to Gasconade" the injunction will be denied.

Conclusion
This opinion should not be read in any way as validating the Klan or endorsing its repugnant views. In fact, this entire lawsuit offends the policies underlying Section 1983, the statutory basis for the Klan's claim. Section 1983 was originally enacted as Section 1 of the Ku Klux Act of April 20, 1870. See Monroe v. Pape, 365 U.S. 167, 171-186, 81 S.Ct. 473, 475-483, 5 L.Ed.2d 492 (1961) (discussing the legislative history of the statute currently codified at 42 U.S.C. § 1983). It was part of a comprehensive package of legislation designed to end the Klan's practice of systematically depriving black Americans of the rights of citizenship under color of state law in the Reconstruction South by *1030 dominating state governments. The Court cannot escape the bitter irony in the fact that the Klan should now seek shelter for those same views of hatred and superiority under the very statute that Congress passed to end the Klan's unsavory influence.
As lacking as the Klansman's ideology may be of any redeeming social, intellectual or spiritual value, the Constitution of the United States protects his right to express that ideology as freely as one whose views society embraces. The MHTC cannot use its regulations to target the Klan's unfortunate beliefs. However, the MHTC also retains the right to regulate their own nonpublic forum in a manner that is reasonable and viewpoint neutral. The MHTC has established a reasonable and neutral moratorium on interstate highway adoptions in the City of St. Louis which reflect legitimate safety concerns. The Klan's right to participate in the program does not trump the MHTC's discretion in those regards. However, in applying its nondiscrimination regulation with no evidence of unlawful discrimination by the Klan, the MHTC violates the Klan's First Amendment rights. Similarly, the vague prohibition of participation by those with histories of unlawful violence or criminal behavior cannot be reasonably or neutrally enforced by the MHTC.
IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (# 16) is DENIED.
IT IS FURTHER ORDERED that Petitioners' Motion for Summary Judgment (# 23) is GRANTED in part.
IT IS FURTHER ORDERED that the Chief Engineer of MoDot, the members of the MHTC, and the District Engineer of MoDot's Metro St. Louis District, in their official capacities, are HEREBY ENJOINED from denying the application of the Knights of Ku Klux Klan, Realm of Missouri to participate in the Adopt-a-Highway program on the bases of title 7, Missouri Code of Regulations Section 10-14.030(2)(B)-(C) as discussed in the preceding Memorandum.
IT IS FURTHER ORDERED that the application of the Knights of the Ku Klux Klan, Realm of Missouri to participate in the Adopt-a-Highway program was properly denied by letter of August 14, 1997, for the stated reason of a reasonable and viewpoint neutral moratorium on adoptions of highways within the city limits of St. Louis, Missouri.
IT IS HEREBY FINALLY ORDERED, ADJUDGED and DECREED that this matter is DISMISSED with prejudice except to the extent that this Court retains jurisdiction to enforce the above described injunction under 42 U.S.C. § 1983.
NOTES
[1] The AAH program is described in detail in Missouri, ex rel., Missouri Highway & Transp. Comm'n v. Cuffley, 927 F.Supp. 1248 (E.D.Mo.1996).
[2] This Court also rejects defendants' collateral estoppel argument. Even assuming that defendant could prove privity between the Klan group involved in this controversy and that involved in the Texas litigation, the issues in this case are completely distinct from those in the Texas case. The Fifth Circuit did not decide, as defendants argue, that the KKK has no right to participate in any Adopt-a-Highway program. Rather, the Fifth Circuit decided that the Adopt-a-Highway program was a nonpublic forum, and that under the specific facts of that case, where the Klan desired to have the state place a sign bearing the Klan's name directly in front of an integrated housing project which the Klan had been enjoined from picketing, the state had reasonable and viewpoint neutral grounds for denying the Klan's application. 58 F.3d at 1079-81. In no way can that holding be read so broadly as to limit all rights the Klan might have to participate in AAH programs everywhere.
[3] Apparently, the Klan is attempting to rehabilitate its membership's generally held public image as hate-mongering, night-riding, cowardly thugs.
[4] The Court notes the Klan's apparent failure to propound its "green" message in any other manner whatsoever than through the AAH program. This casts some doubt on the sincerity of the Klan's expressed desire to beautify Missouri's roadsides. However, the government may not dictate by which manner an organization chooses to communicate its platform whether or not that platform is sincerely embraced.