281 F.Supp.2d 989 (2003)
Thomas ROBB, et al., Plaintiffs,
v.
Henry HUNGERBEELER, et al., Defendants.
No. 4:01CV1133 CDP.
United States District Court, E.D. Missouri, Eastern Division.
September 10, 2003.
*990 *991 *992 Robert Herman, Partner, Schwartz and Herman, St. Louis, MO, for plaintiff.
Paula R. Lambrecht, Jefferson City, MO, Philip E. Morgan, Jr., Milton C. Spaulding, Chesterfield, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
This case involves the state's second refusal to allow the Ku Klux Klan to participate in Missouri's Adopt-A-Highway program. In an earlier case the Court of Appeals held that the Missouri Highway and Transportation Commission had unconstitutionally denied the Klan's application to the program based on the Klan's beliefs and advocacy. After that ruling, the Commission adopted new state regulations, which became effective in January of 2001. The Klan applied again, and, citing the new regulations, the Commission again denied the application. The Klan brought this § 1983 action seeking declaratory judgment and injunctive relief.
The parties have filed cross-motions for summary judgment. After careful consideration of the facts, I will grant the Klan's motion for summary judgment. The undisputed facts show that Commission's reasons for denying the Klan's application are unconstitutional. The Court of Appeals has already ruled that the state cannot deny the application because the Klan discriminates on the basis of race, and that decision is binding in this case. The state's other asserted justification  that it can deny an application where courts have previously taken judicial notice that the applicant has a history of violence  is not reasonable in light of the purpose of the forum. I will therefore enter a declaratory judgment in favor of the Klan.

FACTS
The Missouri Highways and Transportation Commission is responsible for the location, design, and maintenance of all highways in the State of Missouri. In furtherance of its continuing maintenance of the state highway system, the Commission established the Adopt-A-Highway program, which is a voluntary program enacted to "reduce litter along the highways, enhance the environment and beautify Missouri's roadsides." Mo.Code Regs. Ann. tit. 7, § 10-14.010(2). Participants in the program conduct activities to help control litter along Missouri highway rights-of-way, which minimizes the expenditures of public funds for litter control.
Civic and nonprofit organizations, commercial and private enterprises, and individuals may submit an application, on a form provided by the Commission, to adopt a designated portion of a state highway. Id. at § 10-14.030. In return, the participants receive recognition for their efforts through a sign acknowledging the identity of the individual or group providing the work. The Commission bears the costs of sign production, erection, and maintenance. The sign, which is erected on the adopted section of the highway, lists only the name of the program participant. The Commission does not allow any symbols, logos, advertising, or other statements to be placed on the signs. Id. at § 10-14.050.
If an application is approved by the Commission, the adopter or the adopter's representative executes a written agreement with the Commission setting forth each party's responsibilities. Id. at § 10-14.040. In this contract, the adopter agrees to "[i]ndemnify and hold harmless the commission and department and their officers, employees and agents from any claim, lawsuit or liability which may arise from the adopter's participation in the program." Id. at § 10-14.040(2)(K). The Commission is responsible for determining the specific section of highway right-ofway *993 that is to be adopted. The Commissions also provides the adopter with safety training and safety equipment, and agrees to remove and dispose of filled trash bags along the sides on the highway.
In March of 2000, the United States Court of Appeals for the Eighth Circuit held that the Commission could not exclude the Knights of the Ku Klux Klan from its Adopt-A-Highway program solely on the basis of the Klan's viewpoint. Cuffley v. Mickes, 208 F.3d 702, 707 (8th Cir. 2000).[1] After this decision, the Commission promulgated new program regulations with respect to eligible adopters, which became effective on January 30, 2001. These regulations provide in part:
(1) The adopter or adopter representative of a group who desires to participate in the program shall submit an application to the commission on a form provided by the commission.
(2) Eligible Adopters. Eligible adopters include civic and nonprofit organizations, commercial and private enterprises and individuals: 1) who have not been convicted of, or pled guilty or no contest to, a violent criminal activity, except as provided below; 2) whose participants have not been convicted of, or pled guilty or no contest to, a violent criminal activity, except as provided below; 3) for whom state or federal courts have not taken judicial notice of a history of violence; or 4) who do not deny membership on the basis of race, color, or national origin. Any individual adopter or participant may be eligible ten (10) years after the completion of incarceration, probation or parole. Applicants who do not meet the eligibility requirement will be denied participation in the program. The commission reserves the right to limit the number of adoptions for a single group.
(3) Acceptance of Application. The commission will have sole responsibility in determining whether an application is rejected or accepted and determining what highway will or will not be eligible for adoption.
* * * * * *
(c) The adopter representative will certify on the application form that the group or organization does not deny membership on the basis of race, color, or national origin.
Mo.Code Reg. Ann. tit. 7, § 10-14.030(2).
On April 19, 2001, Ralph L. Griffith, the Unit Coordinator for the Klan, Realm of Missouri, Unit 188, filed an application on behalf of the Klan to participate in the Adopt-A-Highway program on a one-half mile long stretch of Route 21 in Washington County, Missouri. Don Hillis, a Commission state maintenance engineer, reviewed the Klan's application under the procedures set forth under the new regulations. In a May 18, 2001 letter to Griffith, the Commission notified the Klan that its application was denied, stating:
Under the Adopt-A-Highway rules, a group or organization is eligible to participate in the Adopt-A-Highway program only if it meets the qualification requirements set forth in the state regulations, specifically 7 CSR 10-14.030. Those requirements provide that no group or organization may participate in the program if state or federal courts have taken judicial notice of a history of violence by that group or organization or if the group or organization denies membership on the basis of race, color, or national origin.

*994 Missouri undertakes judicial notice checks of every applicant seeking to participate in the program. Also, applicant groups or organizations are asked on the application form whether they deny membership on the basis of race, color, or national origin. Our judicial notice check confirms that courts have taken judicial notice of a history of violence by the Knights of the Ku Klux Klan. Furthermore, your application states that your group denies membership on the basis of race, color or national origin. I recognize that litigation with Michael Cuffley and the Knights of the Ku Klux Klan, Realm of Missouri recently concluded. In the course of that litigation, and as a result of court rulings that were critical of Missouri Department of Transportation's rules and process at the time, MoDOT responded by revising its rules to ensure they contain eligibility criteria that are viewpoint neutral, that can be applied in an objective, evenhanded way, and that ensure that Missouri's voluntary litter control program is conducted consistent with legal obligations and in the public interest.
The Knights of the Ku Klux Klan do not meet the program's eligibility requirements under these rules. Therefore, your application is denied.
On July 19, 2001, Griffith and Thomas Robb, the National Director of the Klan, filed suit seeking declaratory judgment and injunctive relief. The Klan argues that the Commission unconstitutionally denied its application based on the 2001 regulations. The Klan named as defendants Hillis, Commission Director Henry Hungerbeeler, and the individual Commissioners. The parties have filed cross-motions for summary judgment.

SUMMARY JUDGMENT STANDARD
To determine whether to grant summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. See Fed.R.Civ.P. 56(e).
At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather must only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. Rule 56(c) of the Federal Rules of Civil Procedure mandates entry of summary judgment against a party, if after adequate time for discovery, that party fails to make a showing sufficient to establish the existence of an essential element of the case that the party will have the burden of proving at trial. Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.

DISCUSSION
The Klan advances five arguments in support of its motion for summary judgment: (1) the Commission should be collaterally estopped from relitigating the issues in this case; (2) the Klan's membership requirements are protected by the First and Fourteenth Amendment freedom of association; (3) the Commission impermissibly denied the Klan's access to a public forum; (4) the Commission's judicial notice claim that the Klan has a history of violence is without evidentiary foundation and *995 is therefore pretextual; and (5) the Commission's judicial notice claim is based on impermissible guilt by association.
In its motion for summary judgment, the Commission argues that: (1) permitting the Klan to participate in the program would violate the equal protection clause because the Klan's conduct would constitute state action; (2) allowing the Klan to adopt a highway right-of-way would violate Title VI and would cause Missouri to lose federal highway funding; (3) the Commission should be able to control its own speech on highway signs; and (4) the Commission's reasons for rejecting the Klan's application are constitutional under both the public and non-public forum analysis.
In deciding whether to grant summary judgment, I will address the two parts of the new regulations on which the Commission relied in denying the Klan's application. The Commission stated that the Klan's application was denied because: (1) the Klan is ineligible because only organizations who do not deny membership to individuals on the basis of race, color, or national origin are eligible, and (2) the Klan is ineligible because the Commission's judicial notice check indicates that federal and state courts have taken judicial notice of the Klan's history of violence.

Discriminatory Membership Regulation
In Cuffley the Court of Appeals held that the Commission had unconstitutionally rejected the Klan's application because of its racial discrimination in membership. Citing its new regulations, the Commission has again denied the application for the same reason. The Klan argues that the Commission should be collaterally estopped from relitigating this issue because the Eighth Circuit has already addressed this reason and found it unconstitutional. The Commission argues that its new regulations make the issues different.
"The doctrine of collateral estoppel, or issue preclusion, provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit." United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir.1996) (citing Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided by the court; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issues in the prior action. Canady v. Allstate Ins. Co., 282 F.3d 1005, 1016 (8th Cir.2002). The party asserting collateral estoppel bears the burden of proving that a prior decision satisfies these four elements. Berger Transfer & Storage v. Central States, Southeast and Southwest Areas Pension Fund, 85 F.3d 1374, 1377 (8th Cir.1996).
Collateral estoppel is referred to as "offensive" or "nonmutual" when the parties are not identical. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In such a situation, collateral estoppel can still apply so long as the party against whom it is asserted had a full and fair opportunity to litigate the issue. Id. The decision to allow offensive collateral estoppel is left to the broad discretion of the district court, because issues of fairness may arise in the offensive situation that are not present where the parties are identical. Id. at 330-331; Aetna Cas. and Sur. Co. v. General Dynamics Corp., 968 F.2d 707, 711 (8th Cir.1992).
The plaintiffs here are Thomas Robb, the National Director of the Klan, *996 and Ralph L. Griffith, who actually filed the application with the Adopt-A-Highway program, and who identifies himself as the Unit Coordinator for the Klan, Realm of Missouri, Unit 188. In both of the earlier Cuffley cases the plaintiff was Michael Cuffley, who identified himself as the "Unit Recruiter" of the Klan. The Missouri Highways and Transportation Commission, of course, is the same. The state defendant has pointed to no difference in the cases that would make its incentive to litigate the prior cases any different from its incentive to litigate this one, and in fact, the record of the cases indicates that the state has litigated all three cases forcefully and similarly.
In Cuffley, the Eighth Circuit held that the Commission unconstitutionally denied the Klan's application based on the Klan's racial superiority beliefs and advocacy. 208 F.3d at 707. In reaching this conclusion, the court rejected the Commission's purported reasons for denying the application, one of which was the Klan's discriminatory membership criteria. Under the 1995 regulation, the applicant "must not discriminate on the basis of race, religion, color, national origin or disability. Such discrimination disqualifies the applicant from participation in the program." Id. at 708.
The Eighth Circuit held that this reason for denying the application constituted an unconstitutional condition of the Klan's participation in the Adopt-A-Highway program. The court noted that the Commission "simply cannot condition participation in its highway adoption program on the manner in which a group exercises its constitutionally protected freedom of association." Id. at 709. "Requiring the Klan essentially to alter is message of racial superiority and segregation by accepting individuals of other races, religions, colors, and national origins in order to adopt a highway would censor its message and inhibit its constitutionally protected conduct." Id. at 708.
Under the 2001 regulations, an eligible adopter is one who does "not deny membership on the basis of race, color, or national origin." The Commission attempts to distinguish this somewhat new language by arguing that Griffith admitted on the Adopt-A-Highway program form that the Klan, in fact, discriminates in its membership. I fail to see any material or substantial difference between the two regulations, other than the deletion of disability and religion from the list. The 2001 regulations still allow the Commission to reject those applicants who discriminate in their membership criteria. The Eighth Circuit has conclusively held that this violates the Klan's First Amendment right to freedom of association.
The Supreme Court has stated that the "forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." Boy Scouts of America v. Dale, 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (citing New York State Club Assn., Inc. v. City of New York, 487 U.S. 1, 13, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988)). "Freedom of association ... plainly presupposes a freedom not to associate." Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The Commission's new regulation contravenes this freedom by essentially requiring the Klan to alter its message of racial superiority and segregation by accepting individuals of other races, colors, and national origins.
Although not mentioned in its letter, but nonetheless related to the discriminatory membership regulation, the Commission also argues that permitting the Klan to participate in the Adopt-A-Highway *997 program would violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and would cause Missouri to lose federal highway funding. The Eighth Circuit addressed and rejected this very same argument in Cuffley as follows:
The State's third purported reason for denying the Klan's application is that allowing the Klan to participate in the Adopt-A-Highway program would violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1994), and could cause the State to lose federal highway funding. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Id.; see also id. § 2000d-4a (defining "program or activity" to include all operations of State government departments); id. § 2000d-1 (authorizing termination of federal funding for programs that violate Title VI).
Title VI clearly does not apply directly to prohibit the Klan's discriminatory membership criteria. The Klan is not a direct recipient of federal funds nor are federal funds earmarked for the Klan. See National Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 468, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999) ("Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not."). There is not even an allegation here that the State pays for the Adopt-A-Highway program with earmarked federal funds. The Klan thus is not subject to Title VI.
The question remains, however, whether Title VI prohibits the State from allowing the Klan to participate in the Adopt-A-Highway program. Under U.S. Department of Transportation regulations, the State, as a recipient of federal funds, "may not, directly or through contractual or other arrangements, on the grounds of race, color, or national origin ... [d]eny a person an opportunity to participate in the program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program." 49 C.F.R. § 21.5(b)(1)(vi) (1999). The United States, as amicus curiae, argues that, in allowing the Klan to adopt a highway, the State would violate the regulatory prohibition on any arrangement that bars individuals from participating in a program on the basis of race. In essence, the United States argues that allowing the Klan to adopt a portion of highway would deny other people an opportunity to pick up litter on that portion of the highway on the same terms as the Klan. Once again, we note that the Klan's adoption of a highway does not in any way prohibit others from cleaning along that portion of the highway. But more to the point, we believe the United States interprets the "program" at issue too narrowly. Neither the Klan nor the State would operate a subprogram on the Klan's adopted stretch of highway; instead, the Klan simply would be one of many participants in the overall Adopt-A-Highway program. So long as the State does not deny anyone an opportunity to adopt a highway on an improper basis, the State does not violate Title VI. The Klan, as one of many voluntary participants in the program, is free to determine its own membership
Id. at 710-11.
Because the both Klan's discriminatory membership regulation and the Title VI argument have already been litigated in Cuffley, which resulted in a final adjudication *998 on the merits, and because the Commission had a full and fair opportunity to be heard on these identical issues, I will apply offensive collateral estoppel and grant summary judgment to plaintiffs on these claims.

Judicial Notice Regulation
The Commission also relies on the new judicial notice of violence regulation to deny the Klan's application. The Klan seeks the benefits of collateral estoppel on this issue as well. Addressing the 1995 regulation, the Eighth Circuit in Cuffley stated in part:
The State's second purported reason, that the Klan has a history of unlawfully violent and criminal behavior, is based on another of the State's new regulations: "Applicants with a history of unlawfully violent or criminal behavior will be prohibited from participation in the program." Mo.Code. Regs. Ann. tit. 7, § 10-14.030(2)(C). All of the evidence, however, supports the Klan's contention that this reason is pretextual.
As we read the regulation, anyone who has ever committed a criminal act, from murder and mayhem to joyriding and jaywalking, is ineligible to participate in the program. Were the State actually to enforce this regulation with any regularity, we have little doubt the Adopt-A-Highway program would soon have few adopters.
* * * * * *
... That the State does not know how the regulation applies in practice to the Adopt-A-Highway program is not surprising because the State has never applied the regulation to anyone other than the Klan. Even though the regulation became effective in July 1995, barely a year after the Klan filed its application, the State has never asked an applicant a single question about criminal history, has never done a single investigation of criminal history, and has no idea whether any of the participants in the program have such a history. At oral argument, the State backed further away from the incredible breadth of the regulation, arguing that it was intended to address violent criminal behavior such as that committed by the Klan in the past. The State's argument makes even clearer what was already obvious: that this regulation was intended to target only the Klan and its views.
Cuffley, 208 F.3d at 710.
After reviewing the Commission's regulations, I will decline the Klan's invitation to apply collateral estoppel to the judicial notice regulation. Under the 2001 regulation, an eligible adopter is one "for whom state or federal courts have not taken judicial notice of a history of violence." This provision attempts to narrow the "incredible breadth" of the 1995 regulation, and therefore the issues are not identical. Since the regulations are not the same, the Commission did not have a full and fair opportunity to litigate this issue in Cuffley, and collateral estoppel does not apply.
Instead, I must determine whether the judicial notice reason given by the Commission unconstitutionally violates the Klan's First Amendment rights. The First Amendment, applied to the states through the due process clause of the Fourteenth Amendment, see 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 496 n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), guarantees the right of freedom of speech to individuals and groups. See U.S. Constit. amend. I. The amendment's prohibition against abridging speech extends to expressive conduct, as long as that conduct is "sufficiently imbued with elements of communication." Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).
*999 The Supreme Court has articulated a three-step framework to be used when analyzing restrictions on private speech on government property. Cornelius v. NAACP Legal Def. & Educ. Fund., Inc., 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). First, the court must determine whether the speech at issue is protected by the First Amendment. Id. at 797, 105 S.Ct. 3439. If the speech is protected, the court must then identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic. Id. Third, the court "must assess whether the justifications for the exclusion from the relevant forum satisfy the requisite standard." Id.
Turning to the first step, I find that the Klan's desired participation in the Adopt-A-Highway program is "speech" protected by the First Amendment. See Cuffley v. Mickes, 44 F.Supp.2d 1023, 1026 (E.D.Mo.1999); Missouri, ex rel., Missouri Highway and Transp. Comm'n v. Cuffley, 927 F.Supp. 1248, 1254-55 (E.D.Mo.1996). "Nonverbal conduct constitutes speech if it is intended to convey a particularized message and the likelihood is great that the message will be understood by those who view it, regardless of whether it is actually understood in a particular instance in such a way." Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir.1997) (en banc).
Participants in the Adopt-A-Highway program intend to convey a particular message to the traveling public by adopting a particular section of a state highway. The Commission previously admitted that participants seek to participate in the Adopt-A-Highway program in order to have their names on a sign and to promote community awareness of their organizations. Although the Commission questions the Klan's actual message and motive in seeking to participate in the Adopt-A-Highway program, I find the Klan's speech is constitutionally protected.
The second step in this analysis is to identify the nature of the forum. It is fundamental that the "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). In Perry, the Supreme Court described three categories of public fora: (1) the traditional public forum; (2) the designated or limited public forum; and (3) the nonpublic forum. Families Achieving Independence and Respect v. Nebraska Dep't of Soc. Servs., 111 F.3d 1408, 1418 (8th Cir.1997) (en banc).
Traditional public fora are "places which by long tradition or by government fiat have been devoted to assembly and debate." Perry, 460 U.S. at 45, 103 S.Ct. 948. Examples of traditional public fora include streets, parks, town squares, and public sidewalks, which have "immemorially been held in trust for the use of the public and, time out of mind, `have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" Id. (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). Traditional public fora receive the greatest degree of constitutional protection. See Burnham v. Ianni, 119 F.3d at 675.
The second category of government property is the designated public forum, which the state has opened to the public for expressive activity. Perry, 460 U.S. at 46, 103 S.Ct. 948. "The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place." Id. *1000 Examples of designed public fora include university meeting facilities, school board meetings, and municipal theaters, which have been designed for more limited purposes or discussions. Id. at 45-46, 103 S.Ct. 948. So long as a state maintains a forum that is generally open to the public, it is "bound by the same standards as apply in a traditional public forum." Id. at 46, 103 S.Ct. 948.
The third category under Perry is the nonpublic forum, which consists of all other public property that is not by tradition or designation a forum for public communication. Families, 111 F.3d at 1419. This type of forum consists of property usually incompatible with expressive activity. Examples of nonpublic fora include prisons, military reservations, and a school district's internal mailing system. Cornelius, 473 U.S. at 803-804, 105 S.Ct. 3439. These nonpublic fora are governed by less restrictive standards. See Perry, 460 U.S. at 46, 103 S.Ct. 948 (noting that "the State, no less than a private owner of property, has the power to preserve the property under its control for the use to which it was lawfully dedicated").
The parties here disagree about what the forum is, as well as whether that forum  whatever it is  is public, non-public, or something in between. Courts considering Adopt-A-Highway programs have similarly disagreed. Cf. State of Texas v. Knights of the Ku Klux Klan, 58 F.3d 1075, 1078 (5th Cir.1995) (Texas Adopt-A-Highway Program itself is the forum, and is non-public); State of Missouri, ex rel., Missouri Highway and Transportation Comm'n v. Cuffley, 927 F.Supp. 1248, 1257 (E.D.Mo.1996) (highway right-of-way is the forum, and is probably a designated public forum); Cuffley v. Mickes, 44 F.Supp.2d 1023, 1026 (E.D.Mo.1999) (neither the program nor the highway is a public forum, but the program is itself a non-public forum); Knights of Ku Klux Klan v. Arkansas State Highway and Transportation Dept., 807 F.Supp. 1427, 1434 (W.D.Ark. 1992) (highway rights of way are a traditional public forum). It is unnecessary for me to decide whether the forum at issue is the program or the highways, because from the undisputed evidence it is clear that the Commission has not designated either the Adopt-A-Highway program or the highway roadsides as a public forum.
Courts need to look "to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." Cornelius, 473 U.S. at 802, 105 S.Ct. 3439. I find that the undisputed facts demonstrate that the Commission attempted to create a nonpublic forum rather than a traditional or designed forum. First, the Commission plainly states in the regulations that the "program is not intended as a means of providing a public forum for the participants to use in promoting name recognition or political causes. Missouri highway right-of-way is not a public forum." Mo. Code Reg. Ann. tit. 7, § 10-14.010(3). Second, the shoulders of highways are certainly not traditional public fora, such as streets or parks. The Commission retains tight control over access to the highway rights-of-way and to the Adopt-A-Highway program itself. I agree with reasoning of Judge Limbaugh (in the second Cuffley case decided by this court) when he stated that:
The Court finds that the [Commission] does not presently intend to open the shoulders of the Missouri state and interstate highway system for the purposes of traditional discourse. Rather, the [Commission] has developed a scheme to have litter removed from the roadsides cheaply by utilizing free labor. This program creates an extremely narrow outlet for ancillary expression, *1001 strictly limited to the participant's name and the fact of his, her or its participation. The [Commission] maintains tight control over both the program itself and the attendant opportunity for expression it creates. The [Commission] provides the garbage bags for the volunteers, and it strictly limits what they may place on the signs which the [Commission] erects in recognition of their efforts. The state maintains strict control over both the method of speech (placement of the sign and the act of participation) and the message itself (the simple fact of the group's participation in the program).
Cuffley v. Mickes, 44 F.Supp.2d at 1027. Because the shoulders of highways and the Adopt-A-Highway program are not public fora, I will apply the nonpublic forum standard to the Commission's judicial notice regulation.
When government property is a nonpublic forum, regulations must be reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (quoting Perry, 460 U.S. at 46, 103 S.Ct. 948). "Control over access to nonpublic forums can be based on subject matter and speaker identity so long as the distinctions are reasonable in the light of the purpose served by the forum and are viewpoint neutral." Cornelius, 473 U.S. at 806, 105 S.Ct. 3439. Thus, in a nonpublic forum, the state may restrict access if: (1) the restriction is reasonable; and (2) the restriction is viewpoint neutral.
The Commission claims that it denied the Klan's application because thirty-two federal and state court cases, some dating back to the 1920s, have taken judicial notice of the Klan's history of violence. Indeed, even the Supreme Court recently chronicled the Klan's violent history in Virginia v. Black, ___ U.S. ___, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). The Court stated that the Klan imposed "a veritable reign of terror" throughout the South by "whipping, threatening to burn people at the stake, and murder." Id. at 1544. The Court noted that the "Klan used cross burnings as a tool of intimidation and a threat of impending violence" and that violence was an elemental part of the Klan. Id. at. 1545.
The Commission may refuse to grant the Klan's application to adopt a section of Route 21 in Washington County, Missouri if the restriction on speech is reasonable. The reasonableness of the state's restriction of access to a nonpublic forum must be assessed "in the light of the purpose of the forum and all surrounding circumstances." Cornelius, 473 U.S. at 809, 105 S.Ct. 3439. A court should consider the forum's special attributes because the significance of the government interest must be assessed in relation to the characteristic nature and function of the nonpublic forum. Kokinda, 497 U.S. at 732, 110 S.Ct. 3115.
According to its brief, the reason underlying the judicial notice regulation is the Commission's concern about liability. The Commission argues that allowing the Klan to participate in the Adopt-A-Highway program could make it liable to others because the Commission is responsible for dangerous conditions on the highway rights-of-way for which it has reasonable notice. Interestingly, the Commission does not assert that the Klan wishes to intimidate or threaten users of the highway system. Rather, the Commission seems more concerned with the "Klan's response to taunts, jeers, or insults hurled at the group by those who do not agree with its position." The Commission argues that an injured person would have a cause of action against the Commission.
*1002 This argument is similar to that made by the Missouri Department of Revenue ("the DOR") in Lewis v. Wilson, 253 F.3d 1077 (8th Cir.2001). In Lewis, the DOR decided not to reissue a motorist a Missouri license plate with the letters "ARYAN-1" because it was contrary to public policy as set forth under a statute. Id. at 1078-79. The motorist filed suit in federal court. The DOR asserted that the motorist's license plate could be regulated because it was likely to provoke a violent response. Id. at 1081. "According to the DOR, drivers who are exposed to the `ARYAN-1' plate may become angry, resulting in road rage and thus creating a traffic hazard." Id.
While the Eighth Circuit did not disagree that road rage was a conceivable consequence of the license plate, the court rejected the DOR's attempt to censor the motorist's speech because of the potential responses of other drivers. Id. at 1082. Without evidence that any motorist had intentionally sought to provoke a violent reaction, the court stressed "the mere possibility of a violent reaction to [the motorist]'s speech is simply not a constitutional basis on which to restrict her right to speak." Id. at 1081. This "argument amounts to little more than the self-defeating proposition that to avoid physical censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawless, the States may more appropriately effectuate that censorship themselves." Id. at 1081-82 (quoting Cohen, 403 U.S. at 23, 91 S.Ct. 1780).
I find Lewis to be instructive in this case. The Commission has offered no evidence to show that the Klan has intentionally sought to elicit a violent response or has directed at a particular individual so-called "fighting words." Unlike in State of Texas v. Knights of the Ku Klux Klan, there is no allegation that the Klan is attempting to intimidate certain people or interfere with the compliance of a court order. In addition, the summary judgment evidence does not support a finding that residents of the area would be reluctant to use Highway 21 or would provoke a violent response from the Klan, even if the Klan were present gathering trash.
Moreover, the Commission's fear of liability is undermined by the indemnity provision found in the regulations. If allowed to adopt a highway, the Klan would have to agree to indemnify the Commission from any claim, lawsuit, or liability which may arise from its participation in the Adopt-A-Highway program. Therefore, the Commission's concerns are unfounded. Instead, they only serve to add credibility to the Klan's pretext argument. The Klan's contention that the judicial notice regulation is simply a pretext to prevent its participation in the program is also bolstered by the fact that no other organization's application has been denied based upon this regulation.
While I do not disagree that some users of the state highway system may voice their displeasure with the Klan and its unfortunate views of racial superiority, it is unconstitutional to deny its application based on what hypothetically might occur when the Klan is picking up trash. Even if I assume that the Commission made no judgment about the viewpoint of the Klan's speechalthough there is evidence that suggests the Klan's views were considered the Klan's application cannot be denied for this reason alone. The First Amendment "knows no heckler's veto." Lewis, 253 F.3d at 1082.
Based on the undisputed evidence, I find that the judicial notice regulation, as applied to the Klan, is not reasonable in light of the purpose of the Adopt-A-Highway program, which is to reduce litter along the highways and beautify Missouri's roadsides. *1003 The Klan's expressive speech of picking up trash along a highway right-of-way cannot be trumped because some people may disagree with its beliefs and advocacy, especially when the Klan agrees to indemnify the Commission. Even "those with viewpoints as thoroughly obnoxious as those of the Klan" are entitled to First Amendment protection. See Cuffley, 208 F.3d at 711.
For the above reasons, I will grant the Klan's motion for summary judgment and enter a declaratory judgment in its favor.
Accordingly,
IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment [# 35] is granted.
IT IS FURTHER ORDERED that defendants' motion for summary judgment [# 39] is denied.
A separate declaratory judgment in accord with this Memorandum and Order is entered this same date.

DECLARATORY JUDGMENT
In accordance with the Memorandum and Order entered this same date,
IT IS HEREBY ORDERED, AJDUDGED, and DECREED that plaintiffs shall have summary judgment.
IT IS FURTHER DECLARED that defendants are hereby enjoined from denying the application of the Knights of the Ku Klux Klan, Realm of Missouri, Unit 188, to participate in the Adopt-A-Highway program on the basis of Mo.Code Reg. Ann. tit. 7, § 10-14.030.
NOTES
[1] The Court of Appeals had dismissed an earlier action for lack of ripeness because the state had not, at that time, denied the Klan's first application. See State v. Cuffley, 112 F.3d 1332 (8th Cir.1997).